UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| SARAH RENEE PRINCE and PRINCE, on behalf of themselves and as next friends to their minor child, A.S.P., <br><br> Plaintiffs, <br><br> v. <br><br> ANTHONY BLINKEN, U.S. Secretary of State, and JULIE M. STUFFT, Acting Deputy Assistant Secretary and Managing Director for Visa Services Bureau of Consular Affairs, <br><br> Defendants. | NO. 2:23CV100-PPS/APR |

## **OPINION AND ORDER**

Plaintiff Sarah Renee Prince, a U.S. Citizen, and her husband Prince (currently a resident of Pakistan), claim that the U.S. State Department has "improperly withheld timely action...for over one year and five months" on their DS-260 Online Immigrant Visa Application, filed with the U.S. Embassy in Islamabad, Pakistan on October 14, 2021. [DE 1 at ¶¶2, 3.] Seeking a speedier response to their visa application, the Princes brought this action against Anthony Blinken, the Secretary of State, and Julie M. Stufft, an Acting Deputy Assistant Secretary of State who is also Managing Director for the Visa Services Bureau of Consular Affairs. I will refer to the defendants collectively as "the State Department."

The complaint contains four counts, all based on the delay in processing the Princes' efforts to obtain an immigrant visa. Count One is brought under the

Mandamus Act, 28 U.S.C. §1361, while Counts Two, Three and Four are each brought under the Administrative Procedures Act, specifically 5 U.S.C. §706. The State Department now seeks dismissal pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted.  [DE 8.]

I.      **Visa Application Procedure**

"In agency review of cases such as this, it is proper for the court to decide at the motion to dismiss stage whether plaintiffs have an actionable legal theory as to the requirement they allege binds the agency." *Skalka v. Kelly*, 246 F.Supp.3d 147, 151 (D.D.C. 2017).  "The Court may even look outside the four corners of the complaint when the plaintiff pleads a specific theory for why the agency is bound, and attaches the relevant documents.  At bottom, the Court has been asked to resolve a purely legal question about the limits on agency discretion, and it is appropriate for the Court to settle it at this stage." *Id*. (internal citations omitted).

As background, the State Department offers a description of the process for family-based immigrant visas of the type sought for Prince.  [DE 9 at 1-3.]  The first step, apparently taken by Mrs. Prince here, is to file a Petition for Alien Relative and confirm the "qualifying relationship."  [DE 9 at 1.]  Approval of this petition by the Citizenship and Immigration Services "does not grant the noncitizen a visa, but only a place in line to seek an immigrant visa."  [*Id*.]  Where, as here, the noncitizen is outside the United States, the approved petition is forwarded to the National Visa Center.  [*Id*. at 2.]  The

NVC must next verify that "(1) all required documentation has been submitted and fees have been paid (known as 'documentarily complete'), and (2) an appointment is available at the Embassy or consulate ('post') in the noncitizen's place of residence." [*Id*.] Once that is done, the NVC then "schedules the noncitizen for an interview before a consular officer to execute a visa application, and transfers the visa case to the post." [*Id*.] The State Department does not dispute that "Plaintiff Prince's case was documentarily complete" as of April 30, 2022. [DE 9 at 19.]

The State Department considers the consular interview as the point at which an application for a visa is made. *Zeynali v. Blinken*, 2022 WL 4462304, at *1 n.1 (D.D.C. 2022), citing 8 U.S.C. §1202(b), 22 C.F.R. §§40.1(1)(2) and 42.81(a). Once a visa application is made, and after the interview, the consular officer must issue the visa or refuse the application. *See* 8 U.S.C. §1201(g); 22 C.F.R. §42.81(a). With certain exceptions, a refusal requires written notice explaining the grounds for the noncitizen's inadmissibility. *See* 8 U.S.C. §1182(b)(1), (3).

The State Department explains that all visa services were suspended at the onset of the COVID-19 pandemic. [DE 9 at 2.] Embassies and consulates began "a phased resumption of routine visa services" in July 2020, and in November 2021 the Secretary of State restored each office's discretion "to prioritize consular services, including visa services." [*Id*. at 3.] The State Department acknowledges "a significant backlog in scheduling immigrant visa application interviews," which it attributes to the pandemic and staffing shortages. [*Id*., citing the Declaration of Suzanne S. McGuire, the

3

Immigrant Visa Unit Chief of the U.S. Embassy in Islamabad, Pakistan (DE 9-1).] As McGuire further explains, the visa processing performed by the Islamabad embassy was further impacted when it "played a major role in assisting those who were evacuated out of Afghanistan after the fall of Kabul in August 2021." [DE 91- at ¶10.]

## II.     Motion to Dismiss Standards

The State Department argues that all four claims are subject to dismissal for both lack of jurisdiction and failure to state a claim because the Princes cannot establish that the State Department is under a mandatory duty to schedule visa interviews on a specific timetable. [DE 9 at 5.]

Fed.R.Civ.P. 12(b)(1) authorizes a motion to dismiss a complaint for lack of subject-matter jurisdiction. Plaintiffs bear the burden of establishing that the court has subject-matter jurisdiction. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103-14 (1998). When considering a Rule 12(b)(1) motion where the complaint is formally sufficient but the defendant contends there is in fact no subject-matter jurisdiction, a court can look beyond the complaint and consider evidence submitted by the parties, without converting the motion to one for summary judgment. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009); *United Transportation Union v. Gateway Western R.R. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996); *Throw v. Mayorkas*, No. 3:22-cv-05699-DGE, 2023 WL 2787222, at *2 (W.D.Wash. April 5, 2023).

The State Department's motion also invokes Rule 12(b)(6), seeking to dismiss the Princes' complaint for failure to state a claim upon which relief can be granted. The

4

Supreme Court interpreted the Rule 12(b)(6) pleading standard in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). Rule 12(b)(6) tests a complaint's legal and factual sufficiency. *Aschroft,* 556 U.S. at 677-80. To survive a motion to dismiss under that standard, a complaint must "state a claim to relief that is plausible on its face," which in turn requires factual allegations sufficient to permit a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S, 570, 556.

### III.   Mandatory Duty Required for All Claims

#### A.   Count One – Mandamus

The Princes' Count One seeks a writ of mandamus. Title 28 U.S.C. §1361 reads: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." A writ of mandamus is an extraordinary remedy "intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear non-discretionary duty." *Heckler v. Ringer*, 466 U.S. 602, 603-04 (1984). "[M]andamus jurisdiction can be invoked only when the plaintiff has a clear right to the relief sought, the defendant has a clear duty to perform, and no other adequate remedy is available." *Blaney v. United States*, 34 F.3d 509, 513 (7th Cir. 1994). *See also Omogiate v. I.N.S.*, 61 Fed.Appx. 258, 263 (7th Cir. 2003). "These three threshold requirements are jurisdictional; unless all are met, a court must dismiss the case for lack of jurisdiction." *American Hospital Ass'n v. Burwell*, 812

F.3d 183, 189 (D.C. Cir. 2016). The lack of a mandatory, non-discretionary duty would deprive the court of subject-matter jurisdiction over the mandamus claim.

Count One of the Princes' complaint asserts that the State Department has failed within a reasonable period of time to comply with its "clear, non-discretionary and mandatory duty to adjudicate the visa application," and that they are entitled to a compulsory order requiring such an adjudication now. The State Department's view is that there has not yet been a visa application by Prince because his embassy interview has not yet occurred. Semantics aside, the Princes are unable to establish the sort of mandatory duty that a successful mandamus petition requires.

The executive branch of the U.S. government has broad discretion in matters relating to immigration, and the Supreme Court has "recognized that judicial deference to the Executive Branch is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'" *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999). By statute, Congress has charged the Secretary of State "with the administration and the enforcement of...immigration and nationality laws." 8 U.S.C. §1104(a). The Secretary is authorized to confer immigration functions and duties on subordinate officers and employees of the State Department and American Foreign Service. *Id*. *See also* 22 U.S.C. §2651a(a)(3)(A) ("The Secretary shall administer, coordinate, and direct the Foreign Service of the United States and the personnel of the Department of State...."). The chief of mission to a foreign country generally has "full responsibility for the direction,

6

coordination, and supervision of all Government executive branch employees in that country."  22 U.S.C. §3927(a)(1).

The Princes cannot dispute that "[t]he Secretary is responsible for over 230 U.S. posts worldwide, and the Secretary and each chief of mission must allocate consular resources to provide a broad range of important services, including assisting U.S. citizens facing emergencies, arrest, or incarceration, or needing official documents, and processing over 110 classifications of immigrant and nonimmigrant visas."  [DE 9 at 6.]  I join other district courts in concluding that allocating the resources of a particular post in an effort to address such varied responsibilities is a discretionary policy decision that relies on the expertise and judgment of the Secretary and the chief of mission.  *Skalka*, 246 F.Supp.3d at 153-54 ("Congress has given the agencies wide discretion int the area of immigration processing."); *Tate v. Pompeo*, 513 F.Supp.3d 132, 148 n.8 (D.D.C. 2021) (noting the Secretary's discretion to determine and prioritize "mission critical" functions and the unavailability of judicial review in the absence of any meaningful standard against which to judge an agency's exercise of discretion); *Preston v. Kentucky Consular Center*, No. 6:22-CV-015-CHB, 2022 WL 3593052, at *9 (E.D.Ky. Aug. 22, 2022) ("the timing and scheduling of [visa application] interviews is firmly committed to agency discretion by law").  Because the scheduling of visa application interviews is a discretionary function of State Department officials, the Princes are unable to establish a clear and nondiscretionary duty that required Prince to be granted such an interview by now.

In their complaint, the Princes cite several legal authorities in an effort to apply particular time limits to the visa application interview Prince seeks. [DE 1 at ¶¶13, 145.] As one court recently observed: "the Court can find no statutory regulatory obligation requiring the State Department to schedule a consular interview by a date certain." *Throw*, 2023 WL 2787222, at *3, quoting *Tekle v. Blinken*, No. 21-CV-1655 (APM), 2022 WL 1288437, at *2 (D.D.C. April 29, 2022) ("Congress did not provide a statutory deadline to complete processing or adjudication of visa applications."). The Princes appear to accept this conclusion by now because, in response to the State Department's analysis of the authorities cited in the complaint, the Princes in their opposition no longer argue that any particular deadline applies. Instead, the Princes contend only that the State Department has violated a nondiscretionary duty to hear and adjudicate Prince's visa application in a reasonable time.

As the State Department says, "[n]o statutes or regulations unequivocally command the Department or Embassy to schedule visa interviews – let alone on any specific timetable." [DE 9 at 7.] "[T]here is no congressionally imposed timeline for processing spousal visa applications." *Eljalabi v. Blinken*, No. 21-1730 (RC), 2022 WL 2752613, at *5 (D.D.C. July 14, 2022), citing *Mohammad v. Blinken*, 548 F.Supp.3d 159, 165 (D.D.C. 2021). Although the Islamabad embassy may be under a general and mandatory duty under 8 U.S.C. §1202(b) to review and adjudicate immigrant visa applications, the Princes' position that there is a mandatory duty with respect to his individual prospective visa application "is ultimately untenable" and cannot support a

8

writ of mandamus. *Babamuradova v. Blinken*, 633 F.Supp.3d 1, 14, 19 (D.D.C. 2022). There is no subject-matter jurisdiction over the petition for mandamus in Count One of the Princes' complaint.

### B. Counts Two, Three, and Four – Administrative Procedures Act

Counts Two, Three and Four are brought under §706(1) and (2) of the APA, based on the same factual predicate – the delay in providing Prince with the embassy interview necessary to make his visa application. Section 706(1) authorizes a court to "compel agency action unlawfully withheld" (Count Three) or "unreasonably delayed" (Count Four). Under §706(2), a court can "set aside" agency action that is found to be unlawful for any of the six reasons enumerated in subsections (A) through (F). The Princes' claim under §706(2) of the APA (Count Two) does not allege which of those subsections the State Department's action flunks. Instead, Count Two merely duplicates the Princes' theories of agency action that has been unlawfully withheld and unreasonably delayed, as pled in support of Counts Three and Four. [DE 1 at ¶¶155, 156, 157, 159, 165.]

The APA prohibits judicial review of agency action that is "committed to agency discretion by law." 5 U.S.C. §701(a). *See also Norton*, 542 U.S. at 64. On a claim that agency action is unlawfully withheld, §706(1) "empowers a court only to compel an agency 'to perform a ministerial or non-discretionary act'," and the claim "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004),

quoting Attorney General's Manual on the Administrative Procedures Act 108 (1947) (emphasis added).  An unreasonable delay claim under §706(1) also requires an agency action that is mandatory because "[a] delay cannot be unreasonable with respect to action that is not required."  *Norton*, 542 U.S. at 63 n.1.

The APA "does not provide judicial review for everything done by an administrative agency." *Invention Submission Corp. v. Rogan*, 357 F.3d 452, 459 (4th Cir. 2004) (internal citation omitted).  Like the Mandamus Act, subject- matter jurisdiction over claims under the APA for unreasonable delay and unlawful withholding also requires plaintiffs to establish that the government has a clear, nondiscretionary duty. *Ali v. U.S. Dep't of State*, __ F.Supp.3d __, 2023 WL 3910249, at *4 (E.D.N.C. June 8, 2023); *Babamuradova*, 633 F.Supp.3d at 19, citing *Norton*, 542 U.S. at 63. Therefore "[t]he conclusion just reached – that the State Department has no non-discretionary duty to adjudicate plaintiffs' applications – also forecloses" the APA claims.  *Ali*, at *5 (finding the court lacked jurisdiction to review a request for mandamus or APA claim because of the lack of specific, non-discretionary duties); *Babamuradova*, 633 F.Supp.3d at 16.

### IV.   Conclusion

In the absence of a mandatory, nondiscretionary duty that could be violated by the State Department's failure to yet interview Prince and adjudicate a resulting visa application, the Princes's APA withholding and delay claims and mandamus claim all fail for lack of subject matter jurisdiction.  *Avagyan v. Blinken*, 2022 WL 19762411, at *4

n.2 (D.D.C. Sept. 29, 2022) (collecting cases). I grant the State Department's motion to dismiss under Fed.R.Civ.P. 12(b)(1) and dismiss the case with prejudice.

Because I do not analyze the case under Rule 12(b)(6) standards, I do not reach consideration of the reasonableness of the State Department's delay in handling the Princes' visa petition. I am sympathetic to the hardship the delay has worked on the Princes, as similar delays have surely imposed on thousands of other would-be U.S. residents and their families. By the Declaration of Rebecca Austin, the State Department asserts that as of May 24, 2023, there were more than 2,800 documentarily complete "immediate relative cases" ahead of Plaintiff Prince in the line for visa application interviews at the Islamabad embassy. [DE 9 at 13; DE 9-2 at ¶4.] Although the observation is not dispositive here, I am inclined to the view expressed by many other federal courts faced with similar petitions, that the Princes' "failure to plausibly allege that [the State Department] operates without a rule of reason, together with the effect that their requested relief would have on the queue of petitioners waiting ahead of the Plaintiffs, weighs against judicial intervention to expedite adjudication of Plaintiffs' petitions." *DaCosta v. Immigration Investor Program Office*, __ F.4th __, 2023 WL 5313526, at *9 (D.C. Cir. Aug. 18, 2023). "If a post does not have capacity to interview someone – thereby reviewing and adjudicating their visa application – it cannot do so." *Babamuradova*, 633 F.Supp.3d at 15.

**ACCORDINGLY:**

11

Defendants' Motion to Dismiss [DE 8] is GRANTED pursuant to Fed.R.Civ.P. 12(b)(1) and otherwise DENIED WITHOUT PREJUDICE as to Fed.R.Civ.P. 12(b)(6).

Plaintiffs' Motion for a Temporary Restraining Order and/or Preliminary Injunction [DE 15] is DENIED.

This case is DISMISSED WITHOUT PREJUDICE for lack of subject-matter jurisdiction. The Clerk shall enter judgment accordingly.

SO ORDERED.

ENTERED: August 31, 2023.

      /s/ Philip P. Simon
      PHILIP P. SIMON, JUDGE
      UNITED STATES DISTRICT COURT